UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
OCTAGON MEDIA CORP.,

                Plaintiff,

          - against -

FACEBANK GROUP, INC. and FUBOTV, INC.,

                Defendants.
-------------------------------------------------------------x

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiff OCTAGON MEDIA CORP., d/b/a Wall Street Reporter ("Octagon/WSR"), by and through its attorneys Hantman & Associates, as and for its complaint against defendants Facebank Group, Inc. ("Facebank") and fuboTV, Inc. ("fuboTV"), alleges as follows:

## PRELIMINARY STATEMENT

    1.    This case arises out of the wrongful refusal of defendant Facebank (which subsequently changed its name to fuboTV Inc. and is referred to herein as "Facebank/fuboTV") to honor an option it had granted to Octagon/WSR to purchase 75,000 shares of its stock at an agreed-upon strike price of $12.00 per share.

    2.    Facebank/fuboTV does not deny that it had granted Octagon/WSR the stock option in connection with a marketing services agreement that it had entered into with Octagon/WSR in February 2020. Nor has it disputed the validity of the option. Instead, it has attempted to evade its obligation by manufacturing frivolous claims regarding Octagon/WSR's performance under the marketing services agreement. As detailed herein, Octagon/WSR has fully and satisfactorily performed all its obligations under the agreement and is entitled to exercise the stock option.

    3.    Significantly, the Executive Chairman and CEO of Facebank/fuboTV (John Textor) who negotiated and executed the marketing services agreement on behalf of

Facebank/fuboTV and expressly agreed to the stock option grant has admitted that the option is valid and that Octagon/WSR has performed its obligations and is entitled to exercise the option and purchase the Facebank/fuboTV shares for $12.00 per share.  In a text message sent to Octagon/WSR's CEO Jack Marks on November 19, 2020, after Octagon/WSR had performed all its obligations under the marketing services agreement and was seeking to exercise the option, Mr. Textor wrote: "Your contract says you are entitled to the option to buy shares at a price. . . . The exercise price is already in your contract.  Just tell them [i.e., the current management of Facebank/fuboTV] you want to exercise."  (A copy of the text message from Mr. Textor to Mr. Marks sent on November 19, 2020, is attached hereto as Exhibit A).

## PARTIES

4.      Plaintiff Octagon/WSR is a Wyoming corporation with its principal place of business located in Las Vegas, Nevada.  Octagon/WSR publishes *Wall Street Reporter*, a leading online financial news publication that traces its roots to 1843 as the first financial newspaper published in the United States (www.wallstreetreporter.com).

5.      Defendant Facebank is a publicly-traded Florida corporation with its principal place of business located in New York, New York.  In or about April 2020, Facebank changed its name to fuboTV, Inc.

6.      Defendant fuboTV, f/k/a Facebank Group, Inc., is a publicly-traded Florida corporation with its principal place of business located in New York, New York.  fuboTV and Facebank are one and the same company and, as noted above, is referred to herein as "Facebank/fuboTV".

7.      Facebank/fuboTV has several subsidiaries, including fuboTV Media, Inc. and Facebank, Inc.  According to its website, fuboTV Media, Inc. "is the leading sports-first, live TV streaming platform, offering subscribers access to tens of thousands of live sporting events

annually as well as leading news and entertainment content."[1]  Facebank, Inc. "is a development stage company formed to become the world's first virtual bank dedicated to the capture, storage, protection, distribution and opt-in enjoyment of the world's faces."[2]

8. Facebank/fuboTV is currently listed on the New York Stock Exchange where it is trading publicly under the symbol FUBO.  It previously traded as an over-the-counter (OTC) stock under the symbol FBNK prior to the name change.

9. Facebank/fuboTV's major shareholders include Nomura Holdings Inc., Goldman Sachs Group, Inc., Vanguard Group, Inc., Dragoneer Investment Group, LLC, Islet Management, LP, Morgan Stanley, Caas Capital Management LP, Highline Capital Management, L.P., Credit Suisse AG, and Shaw D.E. & Co., Inc.  Its original funding came from a close friend and colleague of former President Alvara Uribe of the country of Colombia, and his daughter works at Facebank/fuboTV in strategic marketing.  Edgar Bronfman, Jr., is Facebank/fuboTV's current Executive Chairman.  In spite of numerous efforts by Octagon/WSR to resolve this matter without court intervention, Facebank/fuboTV has refused to make any settlement offer and, in spite of promises to do so, has provided no proof to support its frivolous claims.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391 as defendants are subject to this Court's personal jurisdiction and/or a substantial part of the events and omissions giving rise to the claims in this action occurred in this judicial district.

---

[1] https://www.facebankgroup.com/facebank-ag
[2] https://www.facebankgroup.com/facebank

# FACTS

12. *Wall Street Reporter* is a highly reputable online financial news provider that delivers current news and market insight to investors and provides investors with direct access to the CEOs of promising publicly-traded companies.

13. Octagon/WSR, which has published *Wall Street Reporter* online since 1996, has a strong track record of successfully publicizing the stocks of high-potential companies through market-proven investor outreach and marketing campaigns conducted through the *Wall Street Reporter*.

14. *Wall Street Reporter* has a large global investor audience that knows and trusts Octagon/WSR's successful track record and eagerly invests in the companies that it features. This increased market awareness and investor attention, regularly translates into increased market trading activity and stock prices. A large number of stocks featured on Wall Street Reporter have increased by 500% to 1,000% or more in recent years. Defendant Fubo sought to leverage Wall Street Reporter's successful track record and reputation with investors to add market validation to its benefit.

### A.   The Marketing Agreement Between Facebank/fuboTV And Octagon/WSR

15. In or about of January 2020, Facebank/fuboTV's Executive Chairman and CEO John Textor approached Octagon/WSR about conducting an investor outreach and marketing campaign for Facebank/fuboTV.

16. On or about February 4, 2020, after extensive negotiations between Mr. Textor and Octagon/WSR's CEO Jack Marks, Facebank/fuboTV executed and entered into a written Marketing Services Agreement with Octagon/WSR ("Marketing Agreement"), whereby Facebank/fuboTV engaged Octagon/WSR to conduct a three-month "Next Super Stock" investor outreach and marketing campaign for Facebank/fuboTV.   (A copy of the Marketing Agreement

executed by Mr. Textor on behalf of Facebank/fuboTV dated February 4, 2020, with the "Next Super Stock" Program Summary, is attached hereto as Exhibit B).

17. As set forth in the Marketing Agreement, Facebank/fuboTV agreed to compensate Octagon/WSR for its services as follows:

> **Payment Terms:**
>
> - $15,000 monthly for 3 months
>
> - Options: Client [Facebank/fuboTV] will grant Octagon Media Corp. an 18 month option to purchase 75,000 shares at $12.00

18. The stock option was an integral component of the compensation that Facebank/fuboTV was obligated to pay and Octagon/WSR was entitled to receive under the Marketing Agreement. Octagon/WSR's standard marketing agreements with its clients typically includes such a stock option component, which serves the important objective of aligning Octagon/WSR's long-term interests with those of its clients.

19. As Mr. Marks explained in an e-mail sent to Mr. Textor on January 29, 2020, in the course of their negotiations, "There is usually an options component, which aligns our long term goals with yours in producing long term results." (A copy of the e-mail sent from Mr. Marks to Mr. Textor on January 29, 2020, is included in the chain of e-mails between them attached hereto as Exhibit C).

20. Mr. Textor understood and expressly acknowledged and agreed to the granting of the stock option to Octagon/WSR in the Marketing Agreement.

21. On February 4, 2020, shortly before the Marketing Agreement was executed, Mr. Marks sent an e-mail to Mr. Textor to confirm the deal terms, including the proposed stock option grant. Mr. Marks wrote in his e-mail:

> Here's what we can do:
>
> - 3 month program
> - 3 monthly payments of $15K
> - option to buy 75,000 shares at $12.

>Let me know if this works…

(A copy of the e-mail sent from Mr. Marks to Mr. Textor on February 4, 2020, is included in the chain of e-mails between them attached hereto as Exhibit C).

22. Mr. Textor responded in the affirmative and specifically acknowledged the stock option grant to Octagon/WSR in his e-mail response to Mr. Marks: "That works - here's hoping that you make a ton on your options!  Thx". (A copy of the e-mail sent from Mr. Textor to Mr. Marks on February 4, 2020, is included in the chain of e-mails between them attached hereto as Exhibit C).

23. At the time, Facebank/fuboTV stock was trading on the open market at approximately $8.95 per share, approximately 34% below the option strike price of $12.00 per share.

24. The Marketing Agreement was executed shortly after this e-mail exchange between Mr. Textor and Mr. Marks confirming the terms of the deal.

25. Thereafter, from approximately February 2020 until July 2020, Octagon/WSR dutifully and faithfully performed all its obligations and rendered all the services that it was required to perform under the Marketing Agreement. (Copies of screenshots showing some of the work performed by Octagon/WSR pursuant to the Marketing Agreement are attached hereto as Exhibit D).

26. Facebank/fuboTV accepted and enjoyed the benefits of all the work performed and services provided by Octagon/WSR.

**B. Facebank/fuboTV's Failure And Refusal To Honor The Stock Option Granted To Octagon/WSR In The Marketing Agreement**

27. Pursuant to the Marketing Agreement, Facebank/fuboTV made all three of the $15,000 payments that it was required to make to Octagon/WSR for its services.

6

28. The last $15,000 payment was made in December 2020, after Facebank/fuboTV confirmed and was satisfied that Octagon/WSF had completed all the work that it was required to perform under the Marketing Agreement. Facebank/fuboTV did not raise any question or concern about the work performed by Octagon/WSR.

29. However, Facebank/fuboTV failed and refused to honor the stock option granted to Octagon/WSR in the Marketing Agreement.

30. Octagon/WSR has made numerous requests to receive and exercise the stock option, starting in July 2020. In response, Facebank/fuboTV did not deny that it had granted Octagon/WSR the option to purchase 75,000 of its shares at the agreed-upon strike price of $12.00 per share. Nor did it dispute the validity of the option.

31. Instead, Facebank/fuboTV has attempted to evade its obligation by frivolously claiming for the first time that Octagon/WSR failed to perform its obligations under the Marketing Agreement. Facebank/fuboTV never made any such claim before Octagon/WSR sought to exercise the stock option.

32. This claim is utterly frivolous because Facebank/fuboTV had made all three of the required $15,000 payments to Octagon/WSR under the Marketing Agreement and thereby confirmed and admitted that Octagon/WSR had fully and satisfactorily performed all its obligations thereunder.

33. It was only in response to Octagon/WSR's subsequent requests to exercise its stock option that Facebank/fuboTV sought for the first time to baselessly question Octagon/WSR's performance.

34. Significantly, Mr. Textor, who negotiated and executed the Marketing Agreement on behalf of Facebank/fuboTV and expressly agreed to the stock option grant, has <u>admitted</u> that the option is valid and that Octagon/WSR has performed its obligations and is entitled to

exercise the option and purchase Facebank/fuboTV shares at the agreed-upon strike price of $12.00 per share.

35. In a text message sent to Mr. Marks on November 19, 2020, Mr. Textor stated: "Your contract says you are entitled to the option to buy shares at a price. . . . The exercise price is already in your contract.  Just tell them [i.e., the current management of Facebank/fuboTV] you want to exercise."  (Exh. A).

36. As noted above, Mr. Textor was the Executive Chairman and CEO of Facebank/fuboTV at the time the Marketing Agreement was entered.  Upon information and belief, he is currently a Director of the company.

37. All efforts by Octagon/WSR and its counsel to resolve this simple and straightforward matter without court intervention have been rebuffed to date by Facebank/fuboTV's current management and its general counsel.  (A copy of a letter from Octagon/WSR's counsel to Gina Sheldon, Facebank/fuboTV's general counsel, dated February 22, 2021, is attached hereto as Exhibit E).

## FIRST CLAIM
### Breach of Contract

38. Plaintiff repeats and realleges each and every allegation set forth above as if they were fully set forth herein.

39. The Marketing Agreement is a valid and binding contract.

40. Octagon/WSR has dutifully and faithfully performed all its obligations and rendered all the services that it was required to perform under the Marketing Agreement.

41. By reason of Octagon/WSR's performance, Octagon/WSR is entitled to, among other things, exercise the option granted to it in the Marketing Agreement to purchase 75,000 shares of Facebank/fuboTV stock at the price of $12.00 per share.

42. Facebank/fuboTV's failure and refusal to honor Octagon/WSR's requests to exercise the stock option constitutes a material breach of the Marketing Agreement.

43. On December 22, 2020, shares of Facebank/fuboTV stock closed at a high of $62.00 per share on the New York Stock Exchange. At that price, the stock option is worth $3,750,000 (75,000 x $50 (i.e., the share price of $62.00 less the strike price of $12.00)).

44. By virtue of the foregoing, Facebank/fuboTV is liable to Octagon/WSR for damages in an amount not less than $3,750,000 (and potentially more if the price of Facebank/fuboTV stock increases above $62.00 a share), plus interest and costs.

## SECOND CLAIM
### Breach Of Implied Covenant Of Good Faith And Fair Dealing

45. Plaintiff repeats and realleges each and every allegation set forth above as if they were fully set forth herein.

46. In all contracts, there is an implied covenant of good faith and fair dealing.

47. Under this covenant, the parties to a contract must deal with each other honestly and in good faith not only with respect to the performance of the contract, but also in their enforcement of the terms of the contract.

48. Facebank/fuboTV has acted in bad faith in failing to comply with the terms of the Marketing Agreement.

49. Facebank/fuboTV's conduct constitutes a breach of the covenant of good faith and fair dealing.

50. By virtue of the foregoing, Facebank/fuboTV is liable to Octagon/WSR for damages in an amount not less than $3,750,000 (and potentially more if the price of Facebank/fuboTV stock increases above $62.00 a share), plus interest and costs.

## THIRD CLAIM
### Conversion

51. Plaintiff repeats and realleges each and every allegation set forth above as if they were fully set forth herein.

52. Octagon/WSR is entitled to purchase 75,000 shares of Facebank/fuboTV stock at the price of $12.00 per share pursuant to the option granted to Octagon/WSR in the Marketing Agreement.

53. By refusing to honor Octagon/WSR's option to purchase the shares, Facebank/fuboTV converted Octagon/WSR's assets for its own use and benefit.

54. By virtue of the foregoing, Octagon/WSR suffered damages in an amount not less than $3,750,000 (and potentially more if the price of Facebank/fuboTV stock increases above $62.00 a share), plus interest and costs.

## FOURTH CLAIM
### Injunctive Relief

55. Plaintiff repeats and realleges each and every allegation set forth above as if they were fully set forth herein.

56. Octagon/WSR is likely to succeed on the merits of its claims.

57. The equities are in Octagon/WSR's favor.

58. Octagon/WSR has no adequate remedy at law.

59. By virtue of the foregoing, the Court should issue a preliminary and permanent injunction enjoining Facebank/fuboTV from redeeming, surrendering, canceling, pledging, assigning, conveying or otherwise transferring the 75,000 shares of Facebank/fuboTV stock owed to Octagon/WSR.

## FIFTH CLAIM
### Declaratory Relief

60. Plaintiff repeats and realleges each and every allegation set forth above as if they were fully set forth herein.

61. Facebank/fuboTV's wrongful refusal to honor Octagon/WSR's stock option has deprived Octagon/WSR of its rights and benefits as a shareholder of Facebank/fuboTV.

62. An actual case or controversy exists.

63. By virtue of the foregoing, the Court should enter a judgment declaring Octagon/WSR entitled to purchase 75,000 shares of Facebank/fuboTV stock at the price of $12.00 per share and directing Facebank/fuboTV to honor Octagon/WSR's stock option.

64. Octagon/WSR has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

65. Octagon/WSR hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Octagon/WSR respectfully requests that this Court enter judgment against defendant Facebank/fuboTV as follows:

A. On the first claim, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from Facebank/fuboTV's breach of the Marketing Agreement, the amount of which is to be determined at the time of trial but which shall be no less than $3,750,000, plus interest and costs.

B. On the second claim, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from Facebank/fuboTV's breach of the implied covenant of good faith and fair dealing, the amount of which is to be determined at the time of trial but which shall be no less than $3,750,000, plus interest and costs.

C. On the third claim, awarding all direct, indirect, consequential, special, compensatory and other damages resulting from Facebank/fuboTV's conversion of Octagon/WSR's assets, the amount of which is to be determined at the time of trial but which shall be no less than $3,750,000, plus interest and costs.

D. On the fourth claim, issuing a preliminary and permanent injunction enjoining Facebank/fuboTV from redeeming, surrendering, canceling, pledging, assigning, conveying or otherwise transferring the 75,000 shares of Facebank/fuboTV stock owed to Octagon/WSR.

  E. On the fifth claim, entering judgment declaring Octagon/WSR entitled to purchase 75,000 shares of Facebank/fuboTV stock at the price of $12.00 per share and directing Facebank/fuboTV to honor Octagon/WSR's stock option.

  F. On all claims, awarding punitive damages to the extent allowable under applicable law.

  G. Granting attorneys' fees, interest, costs, disbursements, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
   May 11, 2021

            HANTMAN & ASSOCIATES
            www.hantmanlaw.com

          By: /s/ Robert Hantman
            Robert J. Hantman
            Bryan Ha
            Nyall Cook
            1120 Avenue of the Americas, 4th Floor
            New York, New York 10036
            212-684-3933
            rhantman@hantmanlaw.com

            Attorneys for Plaintiff Octagon Media Corp..,
            d/b/a Wall Street Reporter